IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DALE ALONZO COPEMANN,

    Plaintiff,

v.                                                                              CASE NO. 1:11-cv-75-SPM-GRJ

NANCY BRIEL, LESLIE GARRISON,
SHERRYLLE BUEHLER, GABE
HAMLETTE, and PAM JOHNSON,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff has filed a Complaint purporting to assert claims under the Fair Housing Act against five Defendants arising from the denial of a loan application that he filed with Campus USA Credit Union ("Campus USA") in Gainesville, Florida.  (Doc. 1.)  The Court has reviewed Plaintiff's Complaint (Doc. 1) and Plaintiff's Motion For Leave To Proceed *In Forma Pauperis*. (Doc. 2.)  For the reasons discussed below, it is respectfully **RECOMMENDED** that the Motion To Proceed *In Forma Pauperis* (Doc. 2) should be **DENIED** and this cause should be **DISMISSED** for failure to state a claim.

### I. Introduction

This case is one of two cases Plaintiff filed with the Court on the same day, each of which purports to assert a claim for $40,000,000.00 for violation of the Fair Housing Act based upon Campus USA's denial of Plaintiff's request for a loan.  In this case Plaintiff has sued five employees of Campus USA - each of whom had only very isolated and brief contact with the Plaintiff and apparently had nothing whatsoever to do

with the denial of his loan application. In the other case filed with the Court on the same day, Case No. 1:11-cv-74-SPM-GRJ (the "CV-74 Case"), Plaintiff sued the Assistant Service Center Manager of Campus USA for denying Plaintiff's application for a loan, submitted in February 2011. In that case the undersigned entered a report and recommendation on May 4, 2011 recommending dismissal of the action because Plaintiff's complaint had fallen far short of alleging a viable claim for violation of the Fair Housing Act. ( Doc. 4, CV-74 Case).  The claim in this case and the claim in the CV-74 case appear to be the same or very similar, except for two differences. First, in this case Plaintiff has sued five Campus USA employees, with whom he had contact in 2010, while in the CV-74 case Plaintiff only sued the Assistant Service Center Manager. Secondly, in this case Plaintiff also includes allegations concerning events in 2010.

According to Plaintiff, he was advised in June 2010 that he did not qualify for a loan because he did not have a job and his social security income was not sufficient. Plaintiff does not allege that he actually submitted an application for a loan in 2010 and was denied a loan. However, Plaintiff goes on to allege that he was denied a loan in February 2011 explaining that the reason the loan was denied was because of an unpaid Cox Communications bill on Plaintiff's record, which Plaintiff claims was in error. While Plaintiff's allegation in this case concerning the reason Campus USA denied the loan is not included in the CV-74 Case, this case and the CV-74 Case are based upon the denial of the same loan application in February 2011. Accordingly, other than naming different employees in this case, Plaintiff's claim is equally as deficient as the claim in CV-74.

Moreover, in this case Plaintiff has sued a number of bank employees, who

appear to have had little contact with Plaintiff and his loan application other than isolated and brief discussions with Plaintiff.

While the complaint in this case is sparse on facts the following details emerge as to the alleged brief and isolated involvement of each of the five named Defendants. Defendant Nancy Briel is identified as the Chief Manager of Campus USA. The Complaint does not contain any allegations relating to Ms. Briel suggesting that she ever met or even spoke with the Plaintiff. The sole allegation concerning her participation in the loan is that she is the Chief Manager and thus "was aware of all the transactions ... going on a Campus USA." Thus, other than alleging Ms. Briel had supervisory authority, there are no allegations in the Complaint that Ms. Briel ever had any contact with the Plaintiff or had involvement in the loan application.

Defendant Leslie Garrison is identified as an Assistant Manager at Campus USA.  Plaintiff alleges that he met with Ms. Garrison in June 2010 when she informed him that his monthly Social Security income was insufficient to qualify him for a loan and that he needed to have a job for thirty days before he could apply for a loan. Plaintiff also alleges that in 2011 Ms. Garrison "refused [Plaintiff] the loan for the simple fact [Garrison] had stated that [Plaintiff] had due [a bill] from Cox Cable Communications." doc. 1, p. 7.  According to Plaintiff, this was an error.

Although Plaintiff did not identify Defendant Pam Johnson as a Defendant in section II of the Complaint, she is included in the style of the case and is very briefly mentioned in the statement of facts. In the statement of facts the only mention of Ms. Johnson is that she set up an appointment for Plaintiff to meet with Defendant Garrison.

Defendant Sherylle Buehler is identified as an Assistant Service Manager at

Campus USA. The only allegation in the Complaint concerning the involvement of Ms. Buehler is that she introduced Plaintiff to Defendant Garrison and was the Campus USA employee who sent the loan application to Plaintiff.

Lastly, Defendant Gabe Hamlett is identified as an Assistant Service Manager at Campus USA.. The only contact between Plaintiff and Mr. Hamlett was a single telephone call in February 2011. According to Plaintiff, he telephoned Mr. Hamlett and told him that the failure to pay the Cox Communications bill was not Plaintiff's fault. Plaintiff alleges that Mr. Hamlett told Plaintiff to forward the documentation from Cox Communications. Plaintiff alleges he sent the documentation but Mr. Hamlett claims he did not receive the documentation.

Plaintiff requests damages in the amount of $40,000,000.00 and claims that each Defendant violated the "Federal Fair Housing Law" in some unspecified manner with regard to his unsuccessful loan application at Campus USA.

While the Court can appreciate the Plaintiff's disappointment in not receiving a loan, it is evident from a fair reading of Plaintiff's Complaint that the denial of the loan was because Plaintiff did not have sufficient income, did not have a credit history and did not have a job sufficient for obtaining what appears to be an unsecured loan.[1]

However, independent of the fact that there does not appear to be any plausible factual basis supporting a claim, the Complaint is due to be dismissed because it is devoid of all of the essential allegations to support a claim for violation of the Fair

---

[1] While Plaintiff mentions in the Complaint he wanted a loan to buy a house there is no mention that he had a contract to purchase a home or that he was seeking to take out a mortgage on a particular residence.

Housing Act. Indeed, there are scant allegations in the Complaint that the loan would qualify as a residential real estate related transaction. Even if it did there are no allegations in the Complaint that Plaintiff is a member of a protected class, that the denial of his loan request was the result of any discriminatory motive, that Plaintiff was qualified for the loan or that Campus USA approved loans for individuals outside of Plaintiff's protected class with similar qualifications.

## II. Standard of Review

The screening process under 28 U.S.C. §1915 applies to non-prisoner *pro se* litigants who are proceeding *in forma pauperis*. Boyington v. Geo Group, Inc., 2009 WL 3157642 (M.D. Fla.), *citing* Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002) (dismissals under 28 U.S.C. 1915 apply to non-prisoners, even if fee assessment provisions do not). In order to authorize a litigant to proceed *in forma pauperis*, the court must make two determinations: first, whether the litigant is unable to pay the costs of commencing this action; and second, whether the action is frivolous or malicious." Dycus v. Astrue, 2009 WL 47497, at *1 (S.D. Ala.2009). An application to proceed *in forma pauperis* may be denied if the plaintiff either fails to satisfy the poverty requirement or if plaintiff's claim is frivolous. Martinez v. Kristi Kleaner's Inc., 364 F.3d 1305, 1306 (11th Cir.2004); see also Attwood v. Singletary, 105 F.3d 610, 613 (11th Cir.1997) (stating that a court may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious).

A claim is frivolous if it is based on an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 317 (1989) (applying section 1915). This circuit has defined a frivolous appeal under section 1915 as being one 'without arguable merit. " Harris v.

Menendez, 817 F.2d 737, 739 (11th Cir.1987) (quoting Watson v. Ault, 525 F.2d 886, 892 (5th Cir.1976)).  'Arguable means capable of being convincingly argued. "Moreland v. Wharton, 899 F.2d 1168, 1170 (11th Cir.1990) (per curiam) (*quoting* Menendez, 817 F.2d at 740 n. 5); see Clark v. State of Ga. Pardons and Paroles Bd, 915 F.2d 636, 639 (11th Cir. 1990) (lawsuit is frivolous if the plaintiff's chances of ultimate success are slight); see also Weeks v. Jones, 100 F.3d 124, 127 (11th Cir.1996) (stating that [f]actual allegations are frivolous for purpose of [28 U.S.C.] 1915(d) when they are clearly baseless; legal theories are frivolous when they are indisputably meritless. ") (citations omitted).

### III.  Discussion

Plaintiff is attempting to bring a claim for violation of the Fair Housing Act ("FHA").  The FHA provides in relevant part that "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin."  42 U.S.C. § 3605.  "Residential real estate-related transactions" are defined under the FHA as including "[t]he making or purchasing of loans or providing other financial assistance--(A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or (B) secured by residential real estate."  Id.

Thus, as a threshold matter, to trigger the FHA with regard to the making of loans, the loans must be for "purchasing" a dwelling or the loan must be secured by residential real estate. The only allegation in the Complaint regarding a loan for a

dwelling is Plaintiff's allegation that he told Ms. Garrison in June 2010 that he wanted to apply for a loan to buy a home. Plaintiff does not allege that he actually submitted an application for a loan to buy a house in June 2010. The application for a loan Plaintiff apparently submitted in February 2011 only alleges it was for an unspecified loan. There is no mention that Plaintiff applied for the loan in February 2011 to purchase a home and there is no mention that Plaintiff sought a mortgage secured by a mortgage on a particular piece of residential property. Therefore, the allegations in the Complaint did not fall within the definition of a "residential real-estate related transaction" sufficient to state a claim under the FHA. *See,* Powell v. American General Finance, Inc., 310 F.Supp. 2d 481, 489 (N.D. N.Y. 2004)(Claim for violation of FHA dismissed where "Plaintiff did not allege any facts showing that [Plaintiff] engaged in any real estate transaction or applied ... for a home loan.")

However, as discussed below, even if the Court assumed the loan was to "buy a house" and therefore was a "residential real-estate related transaction" the Plaintiff has still failed to allege any of the essential elements to support a claim for violation of the FHA.

In the credit discrimination context a plaintiff must demonstrate the following elements to establish a *prima facie* case: (1) that the plaintiff is a member of a protected class; (2) that the plaintiff applied for and was qualified for a loan from the defendant; (3) that the loan was rejected despite the plaintiff's qualifications; and (4) that the defendant continued to approve loans for loan applicants outside of the plaintiff's protected class with similar qualifications. Boykin v. Bank of America Corp., 162 Fed. Appx. 837, 839 (11th Cir. 2005)(*per curiam*); Johnson v. Citibank, 234 F.3d 1262 (2d Cir.

2000).  Plaintiff has failed to allege each of these elements.

As a starting point, Plaintiff has failed to even allege that he is a member of a protected class. The Court is left to guess whether Plaintiff claims that he is a member of a racial minority or whether Plaintiff claims he is handicapped. Alleging that Plaintiff is a member of a protected class is not a mere technical pleading deficiency because the gist of a claim under the FHA is that the Plaintiff was treated differently from similarly qualified applicants who are not members of Plaintiff's protected class. This is important because the comparators must be "'nearly identical to prevent courts from second-guessing' reasonable decisions and 'confusing apples with oranges.'" Boykin at 839.

The complaint here is devoid of any allegations from which the Court can conclude that Plaintiff is a member of a protected class who has been treated differently from nearly identical borrowers at Campus USA. For example to allege a viable claim for violation of the FHA, if Plaintiff is African-American (and the Court has no way of knowing) Plaintiff would have to allege that other white borrowers – who also did not have a credit history, who did not have a job and whose sole source of income was social security -- were routinely granted loans. In the absence of such allegations Plaintiff has alleged nothing more than the denial of a loan for a reason (i.e the unpaid Cox Cable bill) Plaintiff contends was not accurate. Thus, even if there was an error by the bank in not investigating whether the unpaid Cox Cable bill was Plaintiff's fault, that would still not be sufficient to advance a claim for violation of the FHA.

Thus, even if the Court were to grant Plaintiff leave to amend to allege that he is a member of a protected class, Plaintiff's claim is, nonetheless, deficient because Plaintiff has failed to allege he met the qualifications for approval of a loan and that

parties with qualifications similar to Plaintiff's, who were not members of his protected class, were approved for the same loans. *See, e.g.* Gorham-Dimaggio v. Countrywide Home Loans, Inc., 592 F.Supp. 2d 283, 290 (N.D.N.Y. 2008)(FHA section 3605 claim dismissed for failure to state a claim where Plaintiff alleged only conclusory allegations to demonstrate that discriminatory measures were implemented because of disability and that "able-bodied" persons were not affected.); Hickson v. Home Federal of Atlanta, 805 F.Supp. 1567, 1572 (N.D. Ga. 1992)("Nowhere ... does [plaintiff] plead that he met whatever qualifications may exist ... or that ...[defendant] engages in exchanges with any other parties, let alone parties with qualifications similar to [plaintiff's]).

In addition to the fact that Plaintiff has failed to allege a claim for violation of the FHA, Plaintiff's claims against the Defendants for individual liability, as opposed to a claim against the lender Campus USA, fail to include any facts showing that the Defendant's actions constitute personal participation in the violation of the FHA. While individuals can be held liable for violations of the FHA, in order to do so the individual personally must have committed one of the acts prohibited under the FHA. Housing Opps. Project v. Key Colony No. 4. Condo. Assoc., Inc., 510 F. Supp. 2d 1003, 1013-14 (S.D. Fla. 2007)("It is clear that the Fair Housing Act allows for claims to be brought against individual Defendants."). Mere supervisory authority over an employee who has committed a violation of the FHA is, however, by itself insufficient to render a supervisor individually liable for a violation of the FHA. Meyer v. Holley, 537 U.S. 280, 282, 290 (2003)(The FHA imposes vicarious liability on a corporate entity in accordance with traditional agency principles, but does not merit holding "every corporate supervisor personally liable without fault for the unlawful act of every corporate employee whom he

or she has the right to supervise.").

The allegations in the Complaint as to the involvement of Defendants Johnson, Buehler, Briel and Hamlett disclose nothing more than brief and isolated contact with the Plaintiff and do not suggest that any of these employees were involved in the approval process for the loan or had any involvement in the denial of the loan. The only conduct of Ms. Johnson alleged in the Complaint is that she made an appointment for Plaintiff to meet a bank employee at another Campus USA location. Similarly, Ms. Buehler's only alleged conduct was that she introduced Plaintiff to Ms. Garrison and mailed the loan application to Plaintiff. The only thing Mr. Hamlett did was to receive a telephone call from Plaintiff and request documentation concerning the Cox Cable bill. With regard to Ms. Biel there are no allegations that she even met with the Plaintiff but only that she was "aware' of what was going on based upon her supervisory position with Campus USA. Simply because she was the supervisor would be insufficient as a matter of law to hold Ms. Briel liable for violation of the FHA. <u>Meyer</u> 537 U.S. at 290.

Lastly, with regard to Ms. Garrison, she is alleged to have had contact with Plaintiff in June 2010, when Plaintiff contacted Campus USA, and contact with Plaintiff in February 2011 when Plaintiff was advised that the February 2011 loan had not been approved. Because there is no allegation that Plaintiff applied for a loan in June 2010, but only that he was advised by Ms. Garrison that in order to apply for a loan Plaintiff needed to show that he was employed and had been employed for at least thirty days, this would be insufficient to allege personal involvement in a residential real estate-related transaction. Further, with regard to Ms. Garrison's alleged conduct in February 2011, Plaintiff alleges only that Ms. Garrison told Plaintiff the loan had been denied.

There are no allegations that Ms. Garrison participated in the review, approval or denial of the loan and, thus, she cannot as a matter of law be held liable merely because she is an Assistant Manager at Campus USA. Accordingly, for these reasons, Plaintiff has failed to allege any legally plausible basis for asserting claims against the Defendants, individually, for violation of the FHA.

In sum, because Plaintiff has failed to allege any facts sufficient to allege the elements of a claim for credit discrimination under the FHA, or to establish that any Defendant personally violated the FHA, Plaintiff's Complaint is due to be **DISMISSED**. Further, although the Court generally would give a *pro se* Plaintiff an opportunity to amend his complaint to cure pleading deficiencies, the Court declines to do so here because Plaintiff cannot demonstrate he was qualified for the loan in that his income was insufficient for the loan. Moreover, even if Plaintiff could allege a claim for violation of the FHA there is no arguable basis for bringing claims individually against the bank employees for their very brief and isolated contacts with the Plaintiff.

### IV.  Conclusion

In light of the foregoing, it is respectfully **RECOMMENDED** that the Motion To Proceed *In Forma Pauperis* (Doc. 2) should be **DENIED** and this cause should be **DISMISSED** for failure to state a claim for relief.

At Gainesville, Florida, this 6th day of May, 2011.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**